1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   DONNY LEE PINE,

11                        Plaintiff,                    CASE NO. 3:15-CV-05486-DWC

12        v.                                            ORDER ON PLAINTIFF'S
                                                        COMPLAINT
13   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
14
                         Defendant.
15

16        Plaintiff, Donny Lee Pine, filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial

17   review of the denial of Plaintiff's applications for Disability Insurance Benefits ("DIB"). The

18   parties have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c),

19   Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a

20   United States Magistrate Judge, Dkt. 5.

21        After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ")

22   erred by failing to properly evaluate the opinions of two of Plaintiff's examining psychologists.

23   Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for

24   further proceedings.

**PROCEDURAL & FACTUAL HISTORY**

On January 23, 2012, Plaintiff filed an application for DIB. *See* Dkt. 7, Administrative Record ("AR") 147-153. Plaintiff alleges he became disabled on August 16, 2010, due to a back injury, depression, and anxiety. *See* AR 147, 168.  Plaintiff's application was denied upon initial administrative review and on reconsideration. *See* AR 80, 94. A hearing was held before an ALJ on October 2, 2013, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 37.

On October 25, 2013, the ALJ found Plaintiff was not disabled within the meaning of Sections 216(i) and 223(d) of the Social Security Act. AR 31. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 19, 2015, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. §§ 404.981, 416.1481. On July 14, 2015, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.

Plaintiff argues the denial of benefits should be reversed and remanded for further proceedings, because: 1) the ALJ failed to find Plaintiff's chronic pain syndrome to be a severe impairment; 2) the ALJ improperly rejected the opinions of three of Plaintiff's examining psychologists; 3) the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony; and 4) the ALJ failed to provide germane reasons for discounting lay witness testimony. Dkt. 9, pp. 1-2.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a

1   scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might

2   accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

3   1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

4   **<u>DISCUSSION</u>**

5   I.   <u>Whether the ALJ Erred by Failing to Consider Plaintiff's Chronic Pain Disorder to be a Severe Impairment at Step Two of the Sequential Evaluation</u>

6   **A. Standard**

7

8   At Step Two of the sequential analysis, the ALJ is required to determine whether the

9   claimant has "a medically severe impairment or combination of impairments." *Smolen v. Chater*,

10   80 F.3d 1273, 1289-90 (9th Cir. 1996) (internal citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii),

11   416.920(a)(4)(ii) (2015). Impairments must result "from anatomical, physiological, or

12   psychological abnormalities which can be shown by medically acceptable clinical and laboratory

    diagnostic techniques." 20 C.F.R. § 416.908 (2010).

13

14   The Step Two inquiry, however, is merely a threshold determination as to whether a

15   claimant has raised a "prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th

16   Cir. 2007). *See also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (noting the Step Two

17   determination is a *de minimis* screening device used to dispose of groundless claims). An

18   impairment or combination of impairments may be found "not severe only if the evidence

19   establishes a slight abnormality that has no more than a minimal effect on an individual's ability to

20   work." *Smolen*, 80 F.3d at 1290.

21   **B. Application of Standard**

22   Here, Plaintiff has failed to demonstrate he had the severe impairment of "chronic pain

23   syndrome." Dr. Yuri Tsirulnikov, D.O., did diagnose Plaintiff with chronic pain syndrome. AR 608-

24   610. However, Dr. Tsirulnikov did not render an opinion on disability, and as Defendant correctly

1  notes, his diagnosis was based entirely upon subjective statements without any objective medical

2  evidence. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). In any event, Plaintiff

3  prevailed at Step Two, and the ALJ fully considered all of Plaintiff's alleged pain symptoms as

4  arising from his other severe impairment, degenerative disc disease.  AR 20-21, 609 (Dr.

5  Tsirulnikov also diagnosed Plaintiff with lumbar degenerative disc disease, an impairment the ALJ

6  found to be severe). *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). *See also Orn v. Astrue*,

7  495 F.3d 625, 630 (9th Cir. 2007), *Garcia v. Commissioner of Soc. Sec.*, 587 Fed.Appx. 367, 370

8  (9th Cir. 2014).

9       However, as discussed in Section II, below, the ALJ committed harmful errors requiring

10  remand. Thus, on remand, the ALJ should reevaluate Plaintiff's medically-determinable

11  impairments and consider whether Plaintiff's diagnosis of chronic pain syndrome should be

12  considered "severe" at Step Two of the sequential evaluation.

13  II.    Whether the ALJ Properly Evaluated the Medical Opinion Evidence

14          **A.  Standard**

15       The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

16  opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821,

17  830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*,

18  908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an examining

19  physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth

20  specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v.*

21  *Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ can

22  accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

23  clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

24

F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must

explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*,

157 F.3d at 725 (*citing Embrey*, 849 F.2d at 421-22). The ALJ "may not reject 'significant

probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)

(*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642

F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding

[such] evidence." *Flores*, 49 F.3d at 571.

### B.  Application of Standard

The ALJ determined Plaintiff would have the residual functional capacity to interact with

patients in a caregiver setting, was able to interact with supervisors, workers, and the general

public occasionally, should not be assigned tasks requiring teamwork, and is able to remember,

understand, and carry out instructions and tasks generally required by occupations with a specific

vocational preparation level (SVP) of 1 to 2. AR 22. However, the ALJ did not find Plaintiff would

have any limitations or restrictions relating to attendance and schedules, tardiness, or absenteeism,

nor did the ALJ find Plaintiff markedly limited in his ability to perform routine tasks without undue

supervision, or communicate and perform effectively in a work setting with public contact.  AR

308, 600. Plaintiff contends this finding was erroneous, as the ALJ failed to offer specific and

legitimate reasons to reject the more restrictive mental limitations opined to by three examining

psychologists.

### *1. Maria Malcolm, Ph.D.*

Dr. Malcolm examined Plaintiff on two occasions; first on December 30, 2010, and again

on September 8, 2011. AR 309, 313. On mental status examination in 2010, Dr. Malcolm found

Plaintiff's capacity for abstract reasoning was "limited to a degree." AR 318. During her

examination, Dr. Malcolm also administered the Minnesota Multiphasic Personality Inventory, second edition ("MMPI-2"). AR 318. Though Dr. Malcolm noted Plaintiff's MMPI-2 results indicated a degree of symptom exaggeration, Dr. Malcolm diagnosed Plaintiff with Depressive Disorder, NOS, alcohol abuse, and rule out alcohol dependence. AR 314. As a result of these impairments, Dr. Malcolm found Plaintiff would have marked limitations in his ability to perform routine tasks without undue supervision and communicate and perform effectively in a work setting with public contact. AR 308. Dr. Malcolm also found Plaintiff would have moderate limitations in his ability to learn new tasks, understand, remember, and persist in tasks by following complex instructions, be aware of normal hazards and take appropriate precautions, communicate and perform effectively in a work setting with limited public contact, and maintain appropriate behavior in a work setting. AR 315. In 2011, after a second mental status examination, Dr. Malcolm opined Plaintiff had essentially the same diagnoses and limitations he demonstrated during the 2010 examination. *See* AR 307-08.

The ALJ gave little weight to Dr. Malcolm's opinions for two reasons:

[1] Dr. Malcolm noted in her report that one should interpret the MMPI-2 data with caution. However, she used the test results from the MMPI to support her determination of a significant psychiatric disturbance. So while she indicated that the MMPI results should be viewed with caution, she then treated the data as valid without explanation. [AR 319]. [2] There were several inconsistencies throughout the report. He denied depression yet rated himself at 7 (out of 10) for his depression level. He did not have a depressed mood, presenting as euthymic and flat only. He was able to complete the mental status examination and overall interview. His attention and concentration were good. He had no unusual thoughts and he was cooperative. It does not appear that Dr. Malcolm's observations and examination were consistent with her medical source statement and the MMPI data.

AR 27 (numbering added). Plaintiff argues these were not specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Malcolm's opinions.

First, the ALJ's rejection of Dr. Malcolm's opinion due to her use of the MMPI-2 results was not a specific and legitimate reason supported by substantial evidence. AR 27. Dr. Malcolm indicated she recognized the possibility of symptom exaggeration, and "interpreted [the results] with this possible bias in mind." AR 319. A physician or psychologist may raise concerns about the reliability of scores from an individual's mental health testing, but ultimately conclude the objective testing provided valid results. *See Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (noting the ALJ's belief that test results may have been distorted by the claimant's substance abuse, when the examining psychologist did not express such a conclusion, was no more than speculation and did not rise to the level of substantial evidence). Further, though the ALJ contends Dr. Malcolm "treated the [MMPI-2] data as valid without explanation," Dr. Malcolm's report clearly explains her reasoning. Dr. Malcolm stated "a degree of symptom exaggeration may be present" in Plaintiff's MMPI-2 results; however, Dr. Malcolm also noted Plaintiff's scores on the validity indices built in to the MMPI-2 were consistent with an interpretable profile. AR 319. Dr. Malcolm further noted the MMPI-2 results were consistent with other objective evidence in the record, namely, Plaintiff's recent psychiatric hospitalization. AR 319. In spite of Plaintiff's possible exaggeration of symptoms, Dr. Malcolm offered several reasons as to why she considered the MMPI-2 results to be valid. AR 319. Thus, the ALJ's rejection of Dr. Malcolm's opinion due to her use of the MMPI-2 scores which she viewed with caution was not a specific and legitimate reason supported by substantial evidence.

Second, the ALJ's other reason for discounting Dr. Malcolm's opinion—alleged internal inconsistencies—is also not supported by substantial evidence. A review of the ALJ decision reveals the ALJ conflates Dr. Malcolm's 2010 and 2011 opinions, reading them as if Dr. Malcolm had only conducted one mental status exam and issued only one written opinion in September,

1   2011. AR 27. As a result, the purported internal inconsistencies cited in the written decision are the

2   result of the ALJ citing interchangeably Dr. Malcolm's two separate mental status examinations

3   and opinions. For example, though the ALJ claims Plaintiff "denied depression yet rated himself at

4   7 (out of 10)," the record actually indicates Plaintiff denied symptoms of depression at the

5   September, 2011 interview, but rated his depression as a 7 out of 10 during the December, 2010

6   interview. AR 310, 317.[1] Though the ALJ notes Plaintiff "did not have a depressed mood,

7   presenting as only euthymic and flat," this was only in December, 2010; Plaintiff presented with a

8   dysthymic mood and blunted affect during the September, 2011 examination. AR 311, 318. Though

9   the ALJ indicates Plaintiff did not demonstrate unusual thoughts, this was only true in December,

10  2010. AR 318. During the September, 2011 examination, Dr. Malcolm noted Plaintiff was

11  experiencing thoughts about harming others, but has not gone so far as to formulate a plan. AR

12  311.

13      "[A] person who suffers from a mental illness will have better days and worse days, so a

14  snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d

15  704, 710 (9th Cir. 2011). *See also Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) ("[I]t is

16  error to reject a claimant's testimony merely because symptoms wax and wane in the course of

17  treatment."), *Delegans v. Colvin*, 584 Fed.Appx. 328, 330-31 (9th Cir. 2014). Rather than proof of

18  internal inconsistency in Dr. Malcolm's opinion, the ALJ's cited discrepancies appear to reflect

19  variations in Plaintiff's mental state at two different points in time. Thus, the ALJ's conclusion Dr.

20  Malcolm's report was internally inconsistent is not supported by substantial evidence.

21

22      _____

23      [1] Notably, the ALJ ignores Dr. Malcolm's note in the September, 2011 opinion indicating while Plaintiff was not feeling depressed at the time of the interview, he was experiencing auditory hallucinations. AR 310. Further, Plaintiff reported his level of anxiety as a 6 out of 10

24  during both examinations. AR 310, 317.

As the ALJ did not provide specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Malcolm's opinions, the ALJ erred.

### 2.   *C. Kirk Johnson, Ph.D.*

Dr. Johnson examined Plaintiff on February 23, 2012. AR 448. On mental status examination, Dr. Johnson observed Plaintiff's affect and mood were anxious, labile, and "on edge," he appeared "scruffy," and demonstrated concrete thinking. AR 450. Dr.  Johnson also administered the MMPI-2. AR 452. As with Dr. Malcolm's administration of the test, Dr. Johnson indicated Plaintiff's MMPI-2 results suggested the possibility "some exaggeration [was] present." AR 452. However, Dr. Johnson found the MMPI-2's "validity scales also suggest an individual who is overwhelmed and in crisis." AR 452. Dr. Johnson diagnosed Plaintiff with Bipolar disorder, Depressive disorder, and Rule out Psychotic disorder, NOS. AR 448. As a result of Plaintiff's psychological conditions, Dr. Johnson opined Plaintiff was "seriously disturbed," possessed little insight into his conditions and the behavior he could engage in to help manage those conditions, and was "currently seen as unable to work related to his psychiatric condition." AR 452.

The ALJ gave little weight to Dr. Johnson's opinions for the following four reasons:

[1] It is noted that Dr. Johnson gave slightly different diagnoses/determinations in his narrative vs. the state program evaluation form. In one, he listed bipolar disorder, depressive disorder, possible psychotic disorder, and a GAF of 41. In the other, he listed depression, [Attention Deficit Hyperactivity Disorder, ("ADHD")], possible bipolar disorder, and a GAF of 40. [2] Notwithstanding, regardless of the underlying mental impairment, Dr. Johnson's assessment is inconsistent with his examination findings. The only positive findings in the mental status examination were anxiousness and abstract thinking, which were not consistent with Dr. Johnson's medical source statement ("Discussion" section). [3] In addition, Dr. Johnson appeared to rely heavily on MMPI-2 data although he indicated that it showed possible exaggeration. It appears that Dr. Johnson placed more weight on the MMPI data to the extent it conflicted with his own mental status examination findings (e.g., normal thought process, cooperative, and good concentration). [4] In summary, Dr. Johnson's assessment was not consistent with the claimant actual

1    activities where he hung out with family in public venues, maintained a long-term
2    relationship, had friends in Portland, and drove a car and watched sports.

3    AR 28 (numbering added). Plaintiff argues these were not specific and legitimate reasons,

4    supported by substantial evidence, for the ALJ to discount Dr. Johnson's opinion. The Court
     agrees.

5         First, though the ALJ notes Dr. Johnson "gave slightly different diagnoses/determinations

6    in his narrative vs. the state program evaluation form," a review of both documents reveals the

7    perceived inconsistency is not supported by the record. As the ALJ appears to acknowledge, Dr.

8    Johnson identifies bipolar disorder and major depressive disorder on both documents. AR 28, 448,

9    452. Dr. Johnson also notes Plaintiff has a history of ADHD in both documents. AR 449 (noting

10   "probable ADHD" in educational history), AR 451 (Plaintiff "wondered if he had ADHD"), AR

11   452 (noting Plaintiff's "long history" of ADHD). Dr. Johnson also diagnosed Plaintiff with a rule-

12   out psychotic disorder, NOS on the DSHS form. AR 448. Though Dr. Johnson's does not include

13   psychotic disorder in the discussion section of his narrative report, Dr. Johnson does indicate in the

14   testing and mental status section that "[A]ny diagnostic formulation should consider paranoid

15   schizophrenia." AR 452. The ALJ's perceived inconsistency is not supported by substantial

16   evidence.

17        Second, the ALJ was factually incorrect when he indicated "the only positive findings in

18   the mental status examination were anxiousness and abstract thinking." AR 28. In fact, Dr. Johnson

19   documented scruffy appearance, anxious, "on edge," and labile mood and affect, reports of

20   occasional auditory hallucinations, impulsive judgment, and concrete (rather than abstract)

21   thinking. AR 450. Further, Dr. Johnson documented Plaintiff's recent suicidal gestures, as well as a

22   lack of insight into his condition, and "little focus or understanding regarding his symptoms or

23   care." AR 449, 452. Given Dr. Johnson's findings on the mental status examination, clinical

24

ORDER ON PLAINTIFF'S COMPLAINT - 10

1  interview and narrative report, the ALJ's conclusion that Dr. Johnson's assessment was inconsistent

2  with his examination findings was not supported by substantial evidence.

3      Third, Dr. Johnson, like Dr. Malcolm, found Plaintiff's MMPI-2 data to be valid and

4  interpretable, despite some concerns Plaintiff may have exaggerated his symptoms. Moreover, as

5  with Dr. Malcolm, Dr. Johnson explained his reasoning in accepting the MMPI-2 data, noting the

6  "validity scales also suggest an individual who is overwhelmed and in crisis." AR 452. Also, in

7  light of Dr. Johnson's many positive findings on mental status examination and clinical interview

8  which went unmentioned by the ALJ, as discussed above, the MMPI-2 results do not appear to

9  actually contradict Dr. Johnson's examination findings. As with Dr. Malcolm, Dr. Johnson's use of

10  Plaintiff's MMPI data was not a specific and legitimate reason for the ALJ to discount his opinion.

11  *See Edlund*, 253 F.3d at 1159.

12      Finally, though the ALJ cites several of Plaintiff's activities of daily living, the ALJ failed

13  to explain how Plaintiff's activities of daily living actually contradicted Dr. Johnson's opinion. *See*

14  *Esparza v. Colvin*, ___ Fed.Appx. ___ 2015 WL 7567408, *2 (9th Cir. 2015). Further, contrary to

15  Defendant's argument, a review of the record and the activities listed by the ALJ does not reveal an

16  actual inconsistency between Dr. Johnson's opinion and Plaintiff's activities sufficient to justify a

17  rejection of Dr. Johnson's opinion. For example, Defendant argues Dr. Johnson concluded

18  interpersonal relationships should be extremely difficult, yet Plaintiff had a demonstrated history of

19  long-term relationships. Dkt. 15, p. 9 (citing AR 53, 311, 452). Defendant, however, ignores the

20  fact Plaintiff's prior relationship ended with a police standoff and a suicide attempt, followed by

21  subsequent inpatient psychiatric treatment. AR 571. It is also unclear how Plaintiff taking his dog

22  to the park and taking his nephew to a carnival is inconsistent with Dr. Johnson's general

23  diagnostic conclusion that individuals such as Plaintiff "*tend* to have few friends and are *typically*

24

1  isolated." AR 452 (emphasis added), 640. It is true, Dr. Johnson's report indicates Plaintiff does not

2  drive, while a subsequent function report indicates he drives for short periods. AR 211, 449, 452.

3  However, in view of the whole record, this inconsistency is insufficient to warrant disregarding Dr.

4  Johnson's opinions concerning Plaintiff's mental health symptoms and limitations.

5        As the ALJ did not provide specific and legitimate reasons, supported by substantial

6  evidence, for discounting Dr. Johnson's opinions, the ALJ erred.

7                    *3.   Charles Quinci, Ph.D.*

8        Dr. Quinci examined Plaintiff on two occasions; first, on September 26, 2012, and again on

9  September 11, 2013. AR 598, 681.  On mental status examination in 2012, Dr. Quinci observed

10  Plaintiff exhibited dysphoric mood and affect, and demonstrated mild impairments in memory,

11  concentration, and abstract thought. AR 601. Plaintiff also demonstrated moderate to poor insight

12  and judgment. AR 601. Dr. Quinci diagnosed Plaintiff with Major Depression - Moderate, and rule

13  out ADHD. AR 599. As a result of these impairments, Dr. Quinci found Plaintiff would have

14  marked limitations in his ability to perform activities within a schedule, maintain regular

15  attendance and be punctual within customary tolerances. AR 600. Dr. Quinci also found Plaintiff

16  would have moderate limitations in his ability to perform routine tasks without special supervision,

17  communicate and perform effectively in a work setting, and complete a normal workday and

18  workweek without interruptions from psychologically based symptoms. AR 600. In 2013, after a

19  second mental status examination, Dr. Quinci found Plaintiff had essentially the same diagnoses

20  and limitations he demonstrated during the 2012 examination, except Dr. Quinci opined Plaintiff

21  would no longer have more than mild limitations in his ability to perform routine tasks without

22  special supervision. AR 683.

23

24

1    The ALJ found Dr. Quinci's conclusions generally consistent with the ALJ's residual

2   functional capacity assessment. AR 28. However, the ALJ only accorded some weight, rather than

3   great weight, to Dr. Quinci's conclusions, for the following four reasons:

4        [1] Dr. Quinci provided no explanation as to how he concluded that the claimant
         had marked difficulty with attendance and schedules. [2] The fact that a person has
5        moderate or marked difficulty does not provide a vocationally relevant restriction as
         to the claimant's ability to perform certain tasks required as part of job duties. [3]
6        With respect to being able to maintain attendance at work, I note that the claimant
         was able to work consistently while at the grocery store. [4] He stopped working
7        because of his back problem, not his mental problems. Furthermore, the claimant
         alleged that he could work because of his back not due to any mental health
8        impairment. *See* [AR 46, 310]

9   AR 28 (numbering added). Plaintiff contends these were not specific and legitimate reasons,

10  supported by substantial evidence, for discounting Dr. Quinci's opined limitations concerning

11  Plaintiff's marked difficulties with attendance and schedules. The Court disagrees, in part.

12       As the ALJ correctly noted, neither of Dr. Quinci's reports provide an explanation of, or

13  findings consistent with, marked limitations in Plaintiff's ability to perform activities within a

14  schedule, maintain regular attendance, and be punctual within customary tolerances. AR 600, 683.

15  An ALJ may properly discount an examining psychologist's opinion when it is brief, conclusory,

16  and inadequately supported by clinical findings or by the record as a whole. *Batson v. Social*

17  *Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing Tonapetyan v. Halter*, 242 F.3d

18  1144, 1149 (9th Cit. 2001)); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Further,

19  Plaintiff indicated throughout the record he stopped his past relevant work as a meat cutter due to

20  his back impairments, not his mental health impairments. AR 46, 310, 683. These were specific

21  and legitimate reasons, supported by substantial evidence, for the ALJ to discount Dr. Quinci's

22  opinions.

23

24

1    However, the ALJ's other reasons for discounting Dr. Quinci's opinion were not specific

2    and legitimate reasons supported by substantial evidence. First, the ALJ does not cite, nor can the

3    Court find, any evidence in the record suggesting Plaintiff was or was not able to work consistently

4    at the grocery store. Second, Dr. Quinci completed two Washington State Department of Social &

5    Health Services ("DSHS") forms routinely used in psychological evaluations for disability

6    benefits. AR 600, 683. The DSHS forms describe categories of functioning and levels of

7    impairment to those categories frequently used to assess psychological impairments in Social

8    Security disability cases. *See, e.g.*, *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007) (ALJ

9    relied upon an examining psychologist who opined a claimant had moderate and mild limitations

10   in his ability to perform activities within a schedule, maintain regular attendance, be punctual

11   within customary tolerance, and complete a normal workday and workweek without interruption

12   from psychologically based symptoms, among other limitations). Importantly, the classifications of

13   mild, moderate, and marked limitations for mental impairments are expressly incorporated into

14   Social Security Administration regulations. *See* 20 C.F.R. § 416.920a. *See also Haugen v. Colvin*,

15   2016 WL 304597, *3 (W.D. Wash. 2016). Contrary to the ALJ's reasoning, Dr. Quinci's opinions

16   as to Plaintiff's mental health impairments are couched in exactly the sort of "vocationally

17   relevant" restrictions considered by the Social Security Administration. In light of these errors, and

18   in light of the fact the case must be remanded for reconsideration of the medical opinion evidence,

19   the ALJ should reconsider Dr. Quinci's opinions on remand.

20

21

22

23

24

1

**C.  Harmless Error**

2      Identifying an error in the ALJ's decision does not end this Court's inquiry. "[H]armless

3   error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115

4   (9th Cir. 2012). An error is harmless if "there remains substantial evidence supporting the ALJ's

5   decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina*, 674

6   F.3d at 1115 (*quoting Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1197 (9th Cir. 2004)).

7      Here, the ALJ concluded Plaintiff had a residual functional capacity which did not include

8   all of the limitations opined to by Dr. Malcolm and Dr. Johnson. A failure to properly discount

9   limitations which are more restrictive than ones contained in the residual functional capacity

10  finding is not "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d. at

11  1115. Thus, the ALJ's errors in evaluating the medical opinion evidence are harmful errors

12  requiring remand.

13  III.   Whether the ALJ Provided Specific, Clear, and Convincing Reasons, Supported by
        Substantial Evidence, for Finding Plaintiff Not Fully Credible.

14

15     **A.  Standard**

16     If an ALJ finds a claimant has a medically determinable impairment which reasonably

17  could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the

18  ALJ may reject the claimant's testimony only "by offering specific, clear and convincing reasons."

19  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12 F.3d 915, 918

20  (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility for resolving

21  conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d

22  639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); *Calhoun

23  v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one rational interpretation

24  concerning a plaintiff's credibility can be drawn from substantial evidence in the record, a district

1  court may not second-guess the ALJ's credibility determinations. *Fair*, 885 F.2d at 604. *See also*

2  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more

3  than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion

4  must be upheld."). In addition, the Court may not reverse a credibility determination where that

5  determination is based on contradictory or ambiguous evidence. *See Allen v. Heckler*, 749 F.2d

6  577, 579 (9th Cir. 1984). That some of the reasons for discrediting a claimant's testimony should

7  properly be discounted does not render the ALJ's determination invalid, as long as that

8  determination is supported by substantial evidence. *Tonapetyan* , 242 F.3d at 1148.

9      **B.  Application of Standard**

10      Plaintiff argues the ALJ failed to offer clear and convincing reasons, supported by

11  substantial evidence, for discounting his subjective complaints. But, the ALJ cited inconsistencies

12  between Plaintiff's statements and the medical record, as well as Plaintiff's ability to work despite

13  the presence of ongoing mental and physical impairments, as reasons for discounting Plaintiff's

14  subjective complaints and testimony. AR 23-26, 206-07, 275, 283, 528, 571-95. These were clear

15  and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony.

16  *See Bray v. Comm'r, Soc. Sec Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Johnson v. Shalala*, 60

17  F.3d 1428, 1434 (9th Cir. 1995)

18      However, an evaluation of a claimant's credibility relies, in part, on an accurate assessment

19  of the medical evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). As discussed in Section II,

20  above, the ALJ erred in evaluating the medical opinion evidence, requiring remand. As this case

21  must be remanded for further proceedings in any event, the ALJ should also reevaluate Plaintiff's

22  credibility anew on remand.

23      IV.  Whether the ALJ Provided Germane Reasons for Rejecting the Lay Witness Evidence
          in the Record

24

ORDER ON PLAINTIFF'S COMPLAINT - 16

In the Ninth Circuit, lay witness testimony is competent evidence and "cannot be disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). *See also* 20 C.F.R. § 404.1413(d), SSR 06-03p, 2006 WL 2329939 at *2. However, an ALJ may discredit a lay witness' testimony with specific reasons "germane to each witness." *Bruce,* 557 F.3d at 1115; *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Here, the ALJ found the witness statements from Plaintiff's fiancée and Plaintiff's sister only provided general descriptions of Plaintiff's problems and provided little relevant information. AR 29, 262, 264. To the extent these lay witness statements were inconsistent with the objective evidence discussed throughout the ALJ's written decision, the ALJ accorded them little weight. AR 29.  The ALJ did note Plaintiff's mother and Plaintiff's fiancée's mother also provided statements which (unlike the statements offered by Plaintiff's fiancée and sister), were based on what they observed or were told. AR 29. However, the ALJ determined these statements were generally inconsistent with the objective evidence discussed throughout the ALJ's written decision. AR 29, 261, 263. These were germane reasons for discounting the lay witness testimony. AR 206-07, 275, 283, 528, 571-95; *Lewis*, 236 F.3d at 511. However, in light of the errors discussed in Section II, above, the ALJ should reevaluate the lay witness statements on remand.

V.    <u>Whether the Case Should be Remanded for an Award of Benefits or Further Proceedings</u>

Plaintiff conclusorily argues the case should be reversed and remanded for the award of benefits, rather than for further proceedings.

Generally, when the Social Security Administration does not determine a claimant's application properly, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has established a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen*, 80 F.3d at 1292. This test, often referred to as the "credit-as-true" rule, allows a court to direct an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman,* 211 F.3d at 1178 (*quoting Smolen*, 80 F.3d at 1292). *See also Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014), *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988). Further, even if the ALJ has made the three errors under *Smolen*, such errors are relevant only to the extent they impact the underlying question of Plaintiff's disability. *Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Id.* (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir. 2005)). Therefore, even if the credit-as-true conditions are satisfied, a court should nonetheless remand the case if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (*citing Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2004)).

1      Here, outstanding issues must be resolved. The record contains conflicting evidence

2  concerning the degree and significance of Plaintiff's physical and mental impairments, as well as

3  outstanding questions concerning Plaintiff's credibility. 206-07, 275, 283, 528, 571-95. Further, the

4  limitations opined to by state agency medical consultants Kent Reade, Ph.D., and Edward Beaty,

5  Ph.D., conflict with the more restrictive opinions rendered by Dr. Malcolm, Dr. Johnson, and Dr.

6  Quinci. *See* AR 77-78, 91-92. *See* Section II, *supra*. Thus, contrary to Plaintiff's argument, there is

7  insufficient evidence in the record to establish Plaintiff could be found disabled as a matter of law.

8  *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000). *See also Treichler v. Comm'r, Soc. Sec.*

9  *Admin.*, 775 F.3d 1090, 1105-06 (9th Cir. 2014). Therefore, the case should be remanded for

10  additional proceedings.

11  **CONCLUSION**

12      Based on the above stated reasons and the relevant record, the Court finds the ALJ erred by

13  failing to properly evaluate the medical opinions of Dr. Malcolm and Dr. Johnson. Therefore, the

14  Court orders this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. 405(g).

15  On remand, the ALJ should reevalaute and reweigh all of the medical opinion evidence, reevaluate

16  Plaintiff's credibility and the lay witness statements, reevaluate Plaintiff's impairments at Step Two

17  of the sequential evaluation, and proceed on to Step Four and/or Step Five of the sequential

18  evaluation, as appropriate. The ALJ should also develop the record as needed. Judgment should be

19  for Plaintiff and the case should be closed.

20      Dated this 18th day of February, 2016.

21

22  David W. Christel

23  United States Magistrate Judge

24